IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| MIDWEST ENVIRONMENTAL CONSULTANTS, CO., A Missouri corporation, JOHN TRENT STOBER, and ANTHONY STARNS,<br><br>        Plaintiffs,<br><br>and<br><br>GREELEY AND HANSEN, L.L.C., an Illinois Limited Liability Company,<br><br>        Intervenor Plaintiff,<br><br>vs.<br><br>GREENWICH INSURANCE COMPANY, a Delaware corporation,<br><br>        Defendant. | Case No. 08-4099-CV-C-NKL |

O R D E R

Plaintiffs Midwest Environmental Consultants Company ("Midwest Co."), John Trent Stober ("Stober"), Anthony Starns ("Starns") brought this declaratory judgment action seeking a declaration that Defendant Greenwich Insurance Company ("Greenwich") is obligated under an insurance policy it issued to Midwest Co. to defend and indemnify Midwest Co., Stober, and Starns in a state court action in Rhode Island. Greenwich has counterclaimed for a declaratory judgment that it is not obligated to defend and indemnify. Plaintiffs and Intervenor-Plaintiff Greeley & Hansen ("Greeley") have moved for summary judgment [Doc. # 26], and Defendant has filed cross motion for summary judgment [Doc.

# 28]. For the reasons stated herein, Plaintiffs' and Intervenor Plaintiff's motion is granted, and Defendant's motion is denied.

## I.  Facts

The core of the dispute between the parties is whether a letter sent to one named insured asserting a claim against that insured constitutes notice of a claim against all the named insureds. The matter is complicated by the multiple corporate entities involved.

### A.  Greeley's Agreement with Midwest P.C.

In 1997, the Rhode Island Resource Recovery Corporation ("RIRRC") employed Greeley to perform engineering services in connection with the design and construction of a leachate pre-treatment facility for the Central Landfill in Cranston, Rhode Island (the "Project"). On June 18, 1997, Greeley entered into an agreement with Midwest Environmental Consultants P.C. ("Midwest P.C."), as a subconsultant providing engineering services in connection with the Project. Pursuant to section P of that agreement, Midwest P.C. agreed that it would indemnify Greeley "against any and all liability . . . arising out of . . . negligent acts or omissions . . . by [Midwest P.C.] or third parties retained by [Midwest P.C.]." Stober and Starns were employees of Midwest P.C. before and during Midwest P.C.'s work on the Project. Both men signed the agreement between Greeley and Midwest P.C.; Stober signed as Project Manager and Starns signed as Director of Operations for Midwest P.C.

### B.  The Asset Purchase Agreement

2

Midwest P.C. completed work under its agreement with Greeley in 1997. In 1998, Starns left Midwest P.C. to work for another engineering company. In 1999, Midwest P.C. changed its name to Tharp Enterprises, Inc. ("Tharp Inc."). In February 2000, Tharp Inc. sold its assets to Midwest Environmental Consultants Co. ("Midwest Co."), a newly formed Missouri corporation, through an Asset Purchase Agreement. Pursuant to the Asset Purchase Agreement, Midwest Co. acquired all the assets of Tharp Inc., including the trade name "Midwest Environmental Consultants," and Tharp Inc. agreed to "retain liability, and remain responsible, for all obligations in connection with [those assets] and for all liabilities and obligations of [the assets it conveyed that were] . . . in existence on or before the date of" the Asset Purchase Agreement. Stober signed the Asset Purchase Agreement as President of Midwest Co.

### C. The Insurance Policies

In 2004, Midwest Co. purchased a Consultants Environmental Liability Policy from Greenwich, policy number PEC000611803, effective from October 1, 2004 to October 1, 2005 (the "2004-2005 Policy"). Greenwich issued another policy to Midwest Co., policy number PEC000611804, as a renewal of the 2004-2005 policy, effective from October 1, 2005 to October 1, 2006 (the "2005-2006 Policy"). Other than the policy periods, the relevant terms of both policies are identical. Both policies are "claims made and reported" policies. Midwest Co. is the named insured, Midwest P.C. is listed as an additional named insured, and Stober and Starns meet the definition of an Insured under both of the Policies. It is undisputed that each of the Plaintiffs qualifies as an Insured under the terms of both

policies. Coverage A under both of the policies provides coverage for claims made and reported during the period of each policy. Both policies contain the following provision:

I. INSURING AGREEMENT

A. <u>Coverage A - PROFESSIONAL LIABILITY</u>

To pay on behalf of the INSURED all LOSS in excess of the Retention amount stated in Item 4 of the Declarations as a result of CLAIMS first made against the INSURED and reported to the Company, in writing, during the POLICY PERIOD, Automatic Extended Reporting Period, or Option Extended Reporting Period, by reason of any act, error or omission in PROFESSIONAL SERVICES rendered or that should have been rendered by the INSURED or by any person whose acts, errors or omissions the INSURED is legally responsible.

Provided always that such act, error or omissions must have been committed or alleged to have been committed:
1.	during the POLICY PERIOD, or
2.	prior to the POLICY PERIOD and subsequent to the Retroactive Date(s) stated in Item 7. of the Declarations [October 1, 1993].

Stober Aff. Exs. D & E. Both policies state on their declarations pages that "COVERAGE A PROVIDES 'CLAIMS MADE AND REPORTED' COVERAGE . . . [AND] REQUIRES THAT A CLAIM BE MADE AGAINST THE INSURED AND REPORTED TO [Greenwich] DURING THE POLICY PERIOD OR EXTENDED REPORTING PERIOD, IF ANY[.]" The policies define "claim" as "a demand received by the INSURED for money or services that arises from PROFESSIONAL SERVICES or CONTRACTING SERVICES," and state that "[t]he definition of CLAIM [is not] necessarily . . . limited to lawsuits, petitions, arbitrations or other alternative dispute resolution requests filed against the

4

INSURED." *Id.* As a condition precedent to coverage, any claims made must be reported to Greenwich when first made. Section VIII of the policies, entitled "Notice" states in part:

> A. As a condition precedent to the coverage hereunder, in the event of a CLAIM, immediate written notice containing particulars sufficient to identify the INSURED and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of available witnesses, shall be given by or for the INSURED to the Company.
>
> B. As a condition precedent to the coverage hereunder, if a CLAIM is made against the INSURED, the INSURED shall immediately forward to the Company every demand, notice, summons, order, or other process received by the INSURED or the INSURED's representative.

*Id.* Under Section VI of both policies, entitled "Limits of Liability and Retention," the policies provide that:

> A. <u>Multiple CLAIMS - Coverages A and B Separately</u>: The inclusion herein of more than one INSURED or the making of CLAIMS by more than one person shall not operate to increase the Company's Limits of Liability. One or more covered CLAIMS for LOSS arising out of the same or related acts, errors, or omissions in PROFESSIONAL SERVICES . . . shall be considered a single CLAIM, and the Limits of Liability stated in Item 3. of the Declarations as applicable to each CLAIM for LOSS shall apply and only one Retention amount shall apply thereto.

*Id.* Under Section IX of both policies, entitled "Other Conditions," both policies contain severability provisions. *Id.* Those provisions state that, except as to the provisions on the limits of liability and retention just cited, the policies apply "as if each NAMED INSURED were the only NAMED INSURED" and "[s]eparately to each INSURED against whom CLAIM is made or suit is brought." *Id.* Finally, Section IX of both policies contain choice

5

of law provisions stating that New York law governs "questions related to the validity, interpretation, performance, and enforcement" of the policies. *Id.*

### D. The Lawsuit, the Letter, and the Third Party Complaint

In November 2004, RIRRC sued Greeley in state court in Rhode Island, claiming that Greeley negligently designed the leachate pre-treatment facility for the Central Landfill. Then, on July 11, 2005, Greeley's attorney, Mark P. Dolan, sent a letter (the "2005 Letter") addressed to Trent Stober and "Midwest Environmental Consultants" demanding indemnification from Midwest Environmental Consultants P.C. This letter was sent to 2014 Williams Street in Jefferson City, Missouri, the address listed for "Midwest Environmental Consultants" in the 1997 Agreement between Greeley and Midwest P.C., and the address in 2005 of Midwest Co. The 2005 Letter was submitted to the Court as Exhibit B to the Affidavit of Anthony Starns. It states, in its entirety:

> Attn: Mr. Trent Stober
> MIDWEST ENVIRONMENTAL
> CONSULTANTS
> 2014 Williams Street
> Jefferson City, MO 65109
>
> Re: Rhode Island Resource Recovery Corporation
> Vs: Greeley & Hansen
> No: Our File 04-379
>
> Dear Mr. Stober:
>
> Please be advised that we represent Greeley & Hansen, LLC, in connection with a lawsuit now pending in the Providence County Superior Court. That litigation concerns a claim by Rhode Island Resource Recovery Corporation with respect to alleged inadequacies in the design and operation of the Leachate Pre-Treatment Facility located on the grounds of the Central

6

> Landfill here in Rhode Island. As you are aware, Midwest Environmental Consultants, P.C. acted as a sub-consultant to Greeley & Hansen in connection with the project. **Greeley & Hansen hereby demands that Midwest Environmental Consultants, P.C. defend and indemnify in connection with the aforementioned litigation, pursuant to the terms of Section P of the Agreement for Professional Engineering Services effective June 18, 1997.**
>
> We look forward to hearing from you or your designate at the earliest opportunity.
>
> Very truly yours,
>
> Mark P. Dolan

*See* Starns Aff. Exhibit B (emphasis added). Starns was not employed by Midwest Co. or Tharp Inc. at the time of the Letter, and was not affiliated with those companies or with Stober; he was unaware of the Letter. Stober was employed by Midwest Co. when he received the Letter; upon receiving it, he forwarded it to Mr. Lee Tharp of Tharp Inc.

Later, on March 20, 2006, Greeley filed a Third-Party Complaint against Midwest P.C., Midwest Co., Stober, and Starns in the Rhode Island suit. Greeley served them in April 2006. After being served, Stober instructed Midwest Co.'s insurance agent - Mr. Conrad Deneault, Jr. - to report the lawsuit and tender the claims to Greenwich on behalf of himself, Midwest Co., Midwest P.C., and Starns. As instructed, Mr Deneault sent the claims to Greenwich by letter on April 5, 2006.

### E. Greenwich Denies Coverage

Greenwich initially agreed to defend Midwest P.C. in the Rhode Island suit, but denied coverage and withdrew its defense by letter of August 1, 2007. Greenwich sent a

7

letter to Midwest Co., Stober, and Starns denying coverage on November 29, 2007. Greenwich claims that there is no coverage because Midwest P.C. did not notify Greenwich about the 2005 letter which was sent to Midwest Environmental Consultants and received by Midwest Co.

**II.     Discussion**

In a declaratory judgment action, this Court has authority to determine legal issues where the existence of any "right, duty power, [or] liability" is presented. *See* Fed. R. Civ. P. 57; 28 U.S.C. § 2201. Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). If the moving party satisfies its burden, Rule 56(e) requires the nonmoving party to respond by submitting evidentiary materials that designate "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477

8

U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.

Plaintiffs and Intervenor move for summary judgment seeking a declaration that Greenwich is obligated to defend Plaintiffs Midwest Co., Stober, and Starns, in the Rhode Island suit under the 2004-2005 Policy. In its counterclaim and its cross-motion for summary judgment Greenwich seeks a declaration that it does not have a duty to defend Plaintiffs in the Rhode Island suit. The facts are largely undisputed; the case turns upon whether the Letter constituted a claim made during the period of the 2004-2005 Policy. If the Letter was a claim, and was not reported to Greenwich, Greenwich has no duty to defend Plaintiffs under either Policy, because Coverage A provides coverage for claims *first* made and reported during a policy period. If the Letter is a claim and was not reported during the policy period in which it was made, there is no coverage under the 2004-2005 Policy. In that case, there would also be no coverage under the 2005-2006 Policy for the subsequent reporting of the Third Party Complaint, as that claim would have been *first* made before the 2005-2006 policy period. Alternatively, if the Letter was not a claim against Plaintiffs, then Greenwich has a duty to defend under the 2005-2006 Policy, as it is undisputed that Plaintiffs reported to Greenwich the service of the Third Party Complaint upon them made during the period of the 2005-2006 Policy.

### A. What is a *Claim* and when is it *Made*?

Under New York law, contracts "should be interpreted so as to give full meaning and

9

effect to all of [their] provisions." *Chapman v. New York State Div. for Youth*, 546 F.3d 230, 236 (2d Cir. 2008). An unambiguous contract "must be enforced according to the plain meaning of its terms." *TIG Ins. Co. v. Newmont Min. Corp.*, 226 Fed. Appx. 49, 50 (2d Cir. 2007) (quoting *Eternity Global Master Fund, Ltd. v. Morgan Guar. Trust*, 375 F.3d 168, 177 (2d Cir. 2004)).

As set out above, both Greenwich policies are "claims made and reported" policies, which provide coverage only for claims "first made against the INSURED and reported to [Greenwich], in writing, during" their respective policy periods. Stober Aff. Exs. D & E. As set out above, both policies define a 'claim' as "a demand received by the INSURED for money or services" and state that the definition of 'claim' is not "limited to lawsuits, petitions, arbitrations or other alternative dispute resolution requests filed against the INSURED." *Id.* The policies' severability clauses state that their provisions are to be applied "[s]eparately to each INSURED against whom CLAIM is made or suit is brought." *Id.*

In describing Coverage A, the policies state that the coverage is for claims first made *against* the insured during the policy period. Similarly, the policies state that the definition of 'claim' is not limited to "lawsuits petitions, arbitrations or other alternative dispute resolution requests filed *against* the [insured]." *Id.* (emphasis added). The policies' severability clauses state that the policies' provisions should be applied separately to each insured. Thus, reading the provisions of both policies as a whole, a 'claim' is 'made' against a particular insured when: (1) a demand (not necessarily limited to lawsuits, petitions,

10

arbitrations, or other alternative dispute resolution requests); (2) for money or services or other specific relief[1]; (3) is made against that insured; and (4) is received by that insured.

Applying this definition of 'claim' to the July 11, 2005 Letter sent by Greeley & Hansen, it is clear that the Letter was *not* a claim against Stober, Starns, or Midwest Co. A 'claim,' as that term is used in the policies, must necessarily be a demand for money, services or other specific relief of a *particular* insured. The Letter, while addressed to Trent Stober of "Midwest Environmental Consultants," never demands anything of any person or entity other than Midwest P.C.

Greenwich argues based upon various theories that the 2006 claims against Plaintiffs were legally derivative of the 2005 claim against Midwest P.C. Even if the Court were to accept Greenwich's argument, it would not follow that a *claim* against Midwest P.C. was a *claim* against one of the Plaintiffs.

Greenwich cites *Valentine-Radford v. American Motorists*, 990 S.W.2d 47 (Mo. Ct. App. 1999), for the proposition that a claim made against a corporate entity is a claim made against its agents and employees. While the *Valentine* court held that "property . . . in the possession of an employee of [a] corporate named insured . . . is also in the possession of that corporate named insured" in the context of a "care, custody, or control" provision in an

---

[1] Courts considering what constitutes a 'claim' for the purposes of claims-made policies under New York law have required "a demand for specific relief owed because of alleged wrongdoing," and have held that a mere "contention that some wrongdoing occurred," absent a demand for some specific relief is insufficient. *In re Ambassador Group, Inc. Litigation*, 830 F.Supp. 147, 155 (E.D.N.Y. 1993) (internal citations omitted); *Purcigliotti v. Risk Enterprise Management Ltd.*,

11

occurrence insurance contract, it did not find that a claim made against a corporate named insured was a claim made against that corporation's agents or employees. *Id.* at 54. That a corporation may possess something only through its agent or employee does not mean that whenever a corporation has been sued, its agents and employees have been sued, or that whenever a claim has been made against a corporation, claims are also made against the corporation's agents and employees. The fact that an employer may be liable for the torts of its employees acting within the scope of their employment does not mean that whenever an employee is sued for such acts, his employer is automatically a defendant or that any claim has been made against the employer. Similarly, if that employer is sued for the conduct of its employee, there has been no "claim" made against the employee even though the employer may have some right to indemnification. The July 11, 2005 Letter did not constitute a claim against Stober or Starns by virtue of the fact that they were former employees of Midwest, P.C.

Greenwich also argues that the Letter is a claim against Midwest Co. because Midwest Co. is a successor in interest to Midwest P.C., and therefore a claim against the latter is a claim against the former. As stated above, Midwest P.C. became Tharp Inc. in 1999, and Tharp Inc. sold its assets – but not its liabilities – to the newly created Midwest Co. in February of 2000. Greenwich acknowledges that the general rule in Missouri is that "when all of the assets of a corporation are sold or transferred, the transferee is not liable for the transferor's debts and liabilities." Def.'s Reply Sugg. in Supp. of Def.'s Motion for Summary Judgment, 10 (citing *Young v. Fulton Iron Works Co.*, 709 S.W.2d 927, 938 (Mo.

12

Case 2:08-cv-04099-NKL   Document 40   Filed 03/16/09   Page 12 of 14

Ct. App. 1986)). However, Greenwich argues that an exception to this rule applies because Midwest Co. may be a "mere continuation" of Midwest Co. *Id.* (citing *Young*, 709 S.W.2d at 938; *Brockman v. O'Neill*, 565 S.W.2d 796, 798 (Mo. Ct. App. 1978)). Greenwich provides no evidence whatsoever that Midwest Co. is a 'mere continuation' of Midwest P.C., while Plaintiffs have provided evidence that Tharp Inc., and not Midwest Co., retains the liabilities of Midwest P.C. More importantly, under the policies, even if Midwest Co. *were* a 'mere continuation' of Midwest P.C., it would not follow that a claim made against Midwest P.C. would be a claim made against Midwest Co. Midwest P.C. and Midwest Co. were separate named insureds under the policies, and the policies state that their provisions – including provisions regarding when a 'claim' has been made upon an insured and whether Greenwich must provide coverage – must be applied separately to each of them. It would therefore be inconsistent with the plain language of the policies to hold that a claim against Midwest P.C. was a claim against Midwest Co.

The fact that there may have been legal theories under which a claim against Midwest P.C. could lead to or allow for claims against Plaintiffs does not mean that any claim was actually made against Plaintiffs on July 11, 2005. Plaintiffs were – at most – merely made aware that a claim might potentially be made against some or all of them in the future. Under the policies at issue here, Plaintiffs were only obligated to report *actual* claims to Greenwich; they had no responsibility to report *potential* claims. The July 11, 2005 Letter was not a claim against Stober, Starns, or Midwest Co.

13

Because the Letter was not a claim against Plaintiffs, Greenwich has a duty to defend under the 2005-2006 Policy. Greeley's third-party complaint, served on Plaintiffs during the period of the 2005-2006 Policy was a claim against Plaintiffs, and was reported to Greenwich by Plaintiffs during the 2005-2006 policy period.

### III.     Greenwich's Obligation to Defend Midwest P.C.

Intervenor Plaintiff Greeley's complaint seeks a declaration that Greenwich is obligated to defend Midwest P.C. in addition to Midwest Co., Stober, and Starns. No party addressed this issue and the Court makes no finding as to Greenwich's obligation to defend Midwest P.C.

### III.     Conclusion

Accordingly, it is hereby

ORDERED that Plaintiffs' and Intervenor Plaintiff's Motion for Summary Judgment [Doc. # 26] is GRANTED; it is further

ORDERED that Defendant's Motion for Summary Judgment [Doc. # 28] is DENIED.

s/ NANETTE K. LAUGHREY  
NANETTE K. LAUGHREY  
United States District Judge

DATE: March 16, 2009  
Jefferson City, Missouri